```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Anthony L. Viola,            :

    Plaintiff,            :

  v.                         :   Case No. 2:16-cv-1036

                                       :   JUDGE GEORGE C. SMITH
Daniel J. Kasaris,               Magistrate Judge Kemp

    Defendant.            :

## REPORT AND RECOMMENDATION

Anthony L. Viola, an inmate at the McKean Federal Correctional Institution located in Bradford, Pennsylvania, has filed this action against Daniel J. Kasaris, who is currently employed as an assistant Ohio Attorney General. Mr. Viola has moved for injunctive relief; Mr. Kasaris opposes that motion and has moved to dismiss. For the following reasons, the Court recommends that the motion to dismiss be granted, the motion for injunctive relief be denied, and the case be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### I. The Complaint

In order to resolve the pending motions, it is necessary to read the complaint closely, and to read its statements in conjunction with the exhibits which are attached. The Court will therefore set out its allegations in detail. It is important to keep in mind that the facts alleged in the complaint are just that - allegations - although the well-pleaded ones must be assumed to be true for purposes of ruling on the motion to dismiss. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009).

Mr. Kasaris was formerly a prosecuting attorney in Cuyahoga County.  Mr. Viola is a former defendant in a case brought by the State of Ohio against him in which mortgage fraud was alleged.  Mr. Kasaris prosecuted that case, which ended in an acquittal.  Mr. Viola was convicted on similar charges in federal court, however, which explains why he is currently an inmate at a federal correctional institution.

The complaint alleges that, during the course of these prosecutions, Mr. Kasaris engaged in some questionable tactics.  Whether he did or did not is not relevant to the issues before this Court.  Mr. Viola claims that he was wrongfully convicted in the federal case.  His friends and supporters have created a website, www.FreeTonyViola.com, the purpose of which (in Mr. Viola's words, see Doc. 1, ¶14) is "to highlight the obvious injustice of a citizen who proved his innocence at trial remaining imprisoned."  One of the topics on the website is the misconduct charges leveled against Mr. Kasaris, as well as allegations about other improprieties, both personal and professional, allegedly engaged in by Mr. Kasaris (who, in addition to being an assistant attorney general, is on the North Royalton, Ohio, City Council).

Mr. Viola alleges that in September and October, 2016, Mr. Kasaris sent what the complaint characterizes as "threatening letters" to both Mr. Viola and to others assisting with the website.  The letter to Mr. Viola is attached to the complaint as Exhibit F.  It reads in full as follows (with all errors as in the original):

    Anthony L. Viola
    # 32238 160
    McKean Federal Corrections Institution
    P.O. Box 8000
    Bradford, PA 16701

```
RE: Ohio Revised Code Section 2921.03(a)

September 26, 2016

   I am writing to inform you that Ohio law provides
that, "No person, knowingly using a materially false or
fraudulent writing with malicious purpose, in bad
faith, or in a wanton or reckless manner, shall attempt
to influence, intimidate, or hinder a public servant in
the discharge of the person's duty."  Please see Ohio
Revised code 2921.03(a).  For approximately a year you
or others on your behalf have carried on a campaign
publishing false or materially false writings in a
reckless manner attempting to intimidate me in the
performance of my duties as a prosecutor and as a city
councilman in the city of North Royalton by using
absolutely false writings some of which have already
been adjudicated to have been false, in a reckless
manner.  In addition you and/or others acting on your
behalf and possibly with your consent have attempted to
interfere business relationships which I have and
employment.

   Please cease the above describe conduct and please
remove or cause to be removed any reference to me, and
my family, including my wife and daughters from the
website known as www.freetonyvioa.com, or any social
media.  Please remove or cause to be removed the
pictures of myself and my daughters from
www.freetonyviola.com or any social media to have
direct or indirect control over.  Failure to do so may
result in the initiation of a complaint against you for
violation of the above statute which is a felony of the
third degree per occurrence, with the appropriate law
enforcement agency.

                                    Sincerely,

                                    [signature]

                                    Dan Kasaris
```

The letter is not on official stationary and, as can be seen from the exhibit, Mr. Kasaris did not sign it in any particular capacity.

The complaint specifically avers that all of the statements

-3-

on www.FreeTonyViola.com are truthful and accurate. However, Mr. Viola claims that the "web team" (which presumably includes himself) "is afraid of being prosecuted for assisting with this initiative." Id. at ¶22. As a result, he asserts that he has been deprived, and will continue to be deprived, of his First Amendment rights. As relief, he seeks a declaration that Mr. Kasaris's actions are unconstitutional, and an order enjoining Mr. Kasaris from further threatening to prosecute either Mr. Viola or others who have assisted with the website.

Mr. Kasaris's motion to dismiss raises three distinct arguments - lack of subject matter jurisdiction, insufficiency of service of process, and failure to state a claim upon which relief can be granted. He has since accepted service, so only two potential grounds for dismissal remain. Because the subject matter jurisdiction argument raises the question of Article III standing, the Court must address that issue first before considering the merits of his claim. See Steel Company v. Citizens for a Better Environment, 523 U.S. 83 (1998).

## II. Standing

Article III, Section 2 of the United States Constitution governs the scope of the "judicial Power" of the United States. It says that this power extends to "all Cases, in Law and Equity" which fall into certain defined categories - cases arising under the Constitution itself being one of those categories - and to certain kinds of "Controversies" as well. If a particular matter brought before a federal court is not one of those described in Article III, Section 2, the court has no jurisdiction - literally, no "judicial Power" - to decide the matter. And if the matter is neither a "case" nor a "controversy," as those terms which appear in Article III have come to be defined, the Court similarly lacks the power to make a merits determination.

In order for a dispute to qualify as a "case or controversy,"

at a  minimum, the plaintiff must have standing to sue.  Standing is conferred by the existence of a real-world injury which places the plaintiff sufficiently at odds with the defendant or defendants so as to make the matter in dispute a "case or controversy."  Not all types of injuries are sufficient, but without some type of injury, the plaintiff lacks standing, and the Court lacks Article III jurisdiction.

This Court has explained the concept of Article III jurisdiction this way:

> It is true that plaintiffs "must possess both constitutional and statutory standing in order for a federal court to have jurisdiction." Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 606 (6th Cir. 2007) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)). "As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing." Loren, 505 F.3d at 607 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In order to establish Article III standing, a plaintiff "must allege: (1) 'injury in fact,' (2) 'a causal connection between the injury and the conduct complained of,' and (3) redressability." Taylor v. KeyCorp, 680 F.3d 609, 612 (6th Cir.2012) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks and citations omitted)).

Jones v. Allen, 2014 WL 347035, *3 (S.D. Ohio Jan. 30, 2014), adopted and affirmed 2014 WL 1235184 (S.D. Ohio Mar. 25, 2014). Each element of Article III standing must be separately and plausibly pleaded; an injury in fact, for example, will not support standing if the injury was not caused by the defendant's conduct, or if the injury would persist even if the court were to rule in the plaintiff's favor.  These elements are designed to insure both that the parties have a sufficient stake in the outcome of the case to make them appropriate and motivated

-5-

adversaries, and to insure that the Court's resolution of the case will have a real-world impact on the parties' legal relationship. Without that, the Court would essentially be rendering advice on a theoretical or collusively-presented legal issue rather than deciding an actual case, and the Constitution does not extend the judicial power that far.

In his motion to dismiss, Mr. Kasaris focuses on the first of the three Article III standing elements: injury in fact. He argues that Mr. Viola has not pleaded an injury to his First Amendment rights which is "'likely to occur imminently.'" See Doc. 6, at 6, quoting Parsons v. United States Dept. of Justice, 801 F.3d 701, 710 (6th Cir. 2015). Mr. Kasaris asserts that when the injury at issue is the "chilling" of a person's right to speak freely, the person must allege something more than simply his or her subjective feeling that an impediment to free speech has been created. Thus, for example, if a person feels deterred from speaking out by the possibility that he or she will face criminal charges, unless there is some objective basis for believing that criminal charges might be filed, the person has not suffered an injury sufficient to confer Article III standing.

Parsons (a decision written by Chief Judge Edmund A. Sargus, Jr., of this Court, sitting by designation on the Court of Appeals) involved this scenario. The plaintiffs were fans of the band "Insane Clown Posse." Followers of the band, called "Juggalos," were identified in a report issued by a federal agency as a "hybrid gang" based on information that some followers of the band had committed crimes. After that identification, some band followers were stopped or investigated by local law enforcement agents based on their display of the band's logo, which identified them as Juggalos. They argued that these stops or investigations constituted an Article III injury. Although the district court dismissed their claims on standing

grounds, the Court of Appeals reversed, finding that the injury which the report had inflicted on the Juggalos' reputation, leading to real-world consequences, was sufficient to confer standing.  The court did, however, in what amounts to *dictum*, state that because the governmental report at issue did not directly regulate the free expression rights of the Juggalos, they could not use the subjective "chill" it placed on their exercise of those rights as an Article III injury.  To that extent, Parsons provides some support for Mr. Kasaris's position.

This case differs from Parsons, however, because the action about which Mr. Viola complains is not having his name placed on some governmental list, or the mere existence of a statute which might be interpreted to criminalize his conduct, but a direct threat made against him.  The substance of that threat (i.e. Mr. Kasaris's letter), fairly read, is that Mr. Viola had already committed multiple felonies by expressing himself through the statements found on his website, and if he did not reverse course, he could be prosecuted.  Since that is the scenario involved here, the Court must engage in a more intricate analysis needed to answer the question of when a threat of prosecution is sufficiently real that a person may sue to enjoin it - which is sometimes considered to be a standing issue, and sometimes an issue of ripeness (that is, there would be a sufficient injury if the person were actually to be prosecuted for speaking, but if the prosecution has not yet taken place, the case might not be ripe (or ready) for adjudication).

The decision in Cooksey v. Futrell, 721 F.3d 226 (4th Cir. 2013) is instructive here.  In that case, the plaintiff operated a website which recounted his experience with diabetes and weight loss, and on which he advocated for a specific diet to combat these problems.  The website featured an advice column, an area where the plaintiff responded to posts by viewers, and an offer

to provide "Diabetes Support Life Coaching" for a fee. Plaintiff's activities were brought to the attention of the North Carolina Board of Dietetics and Nutrition Practices, which in turn led the executive director of that board to call him and tell him that he was being investigated for possible criminal activity (acting as a dietician without a proper license) and directing him to take down portions of his website.  The Board then advised him in writing of "areas of concern" with his site, leading him to take the entire site down and then to sue for infringement of his First Amendment rights.  As here, the key issue was whether the plaintiff had suffered an Article III injury and whether the case was ripe for adjudication despite the fact that no criminal charges had ever been filed.

   The Court of Appeals first analyzed the standing question. It noted that in cases like Secretary of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 956 (1984) the Supreme Court had indicated that, due to the importance of First Amendment rights, standing was more likely to be found in such cases even when the only effect of the statute, regulation, or other governmental action under review was to chill the exercise of such rights.  The Cooksey court recognized, as did Parsons, that this type of injury cannot be based purely on a subjective feeling unaccompanied by any objective basis for it, but it phrased the inquiry in terms of whether a "'person of ordinary firmness'" would have been deterred from exercising his rights. Cooksey, 721 F.3d at 236, quoting Benham v. City of Charlotte, 635 F.3d 129, 135 (4th Cir. 2011).  Because the chilling effect in Cooksey did not come simply from the presence on the books of a statute regulating the practice of dietetics, but a direct statement made by the agency charged with enforcing that statute to the effect that the speech expressed on the website was problematic and that the Board would continue to monitor it, the

court concluded that the plaintiff had met that test.  The court also emphasized that even though plaintiff had actually stopped the purportedly unlawful speech, he did not have to desist completely in order to prove that his right of expression had been chilled.  Id.  Finally, the court pointed out that, although the defendant had made a separate ripeness argument, "standing and ripeness should be viewed through the same lens...."  Id. at 240.  It had no difficulty determining that plaintiff passed both jurisdictional hurdles and that his case should proceed.  It is worth noting that the more liberal interpretation of the standing requirement in the context of a First Amendment claim is supported by case law from this circuit as well.  See, e.g., National Rifle Ass'n of America v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997)("pre-enforcement review is usually granted under the Declaratory Judgment Act when a statute 'imposes costly, self-executing compliance burdens or if it chills protected First Amendment activity.'"), quoting Minnesota Citizens Concerned for Life v. Federal Election Comm'n, 113 F.3d 129, 132 (8th Cir. 1997).

    Like the plaintiff in Cooksey, Mr. Viola has alleged not a general concern about whether the statements on his website might violate O.R.C. §2921.03(a), or simply a subjective fear of prosecution, but has identified a direct threat from a governmental official that unless he removes certain content from his website, he could be prosecuted.  Such threats are specific in nature and are clearly the type of action which would deter a "person of ordinary firmness" from either maintaining the statements on the website or posting other similar statements in the future.  That is enough to satisfy the injury-in-fact requirement of Article III standing.

    Mr. Kasaris does not strenuously argue that, if the Court finds a sufficient injury in fact, the two remaining requirements

of Article III standing - causation and redressability - are not met.  The injury which Mr. Viola alleges stems directly from Mr. Kasaris' letter, and were the Court to grant relief in the form of either a declaratory judgment that the website's contents do not violate state law, or an injunction prohibiting Mr. Kasaris from filing criminal charges against Mr. Viola, the injury would be redressed.  Consequently, it appears that Mr. Viola has standing.

There is one potential problem in this line of reasoning.  The threat of prosecution contained in Mr. Kasaris's letter did not come directly from, for example, a county prosecutor - Mr. Kasaris no longer holds that position - and it is not clear if Mr. Kasaris, as an assistant attorney general, would have the authority to initiate the prosecution by himself.  He argues, in support of his Rule 12(b)(6) motion, that he does not have that ability.  One might be tempted to ask whether a threat of prosecution coming from someone who may not be able to make good on that threat - at least not without the cooperation of some other governmental actor - would actually deter a person of ordinary firmness from continuing to speak out on the issues in question.  But that appears to the Court to be a merits question - namely, has the "state action" element of a claim under 42 U.S.C. §1983 been satisfied?  Courts are often cautioned not to let merits questions bleed over into the standing analysis.  See, e.g., Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009) ("[i]t is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive").  Consequently, the Court will not take this issue into account for purposes of the standing inquiry, and will now turn to the merits question.

### III.  State Action

Mr. Viola bases his claim on the alleged infringement of his rights under the First Amendment to the United States Constitution.  The First Amendment - a remarkably short and plain statement of the rights in question - says this about free speech: "Congress shall make no law ... abridging the freedom of speech ...."  Although, when ratified, this provision applied only to Congress, its protections have since been applied to acts of state governmental officials by means of the Due Process Clause of the Fourteenth Amendment.  See, e.g., Palko v. State of Connecticut, 302 U.S. 319, 326-27 (1937).

What has not occurred, however, is the extension of the First Amendment to the conduct of private individuals.  As the Supreme Court stated in Rendell-Baker v. Kohn, 457 U.S. 830, 837 (1982), "the Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities."  Another way to phrase this concept is to say that, in order for a suit to be maintained for the violation of the First Amendment, there must be some "state action" involved.  This is both a substantive requirement of federal constitutional law and an element of a cause of action under 42 U.S.C. §1983, the statute which allows private individuals to sue for the violation of constitutional rights.  That statute says that a person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" causes someone else to be deprived of certain rights (including First Amendment rights) is liable for that action.  The Supreme Court has equated these two concepts, stating, in United States v. Price, 383 U.S. 787, 794 n.7 (1966), that "[i]n cases under §1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment."

Mr. Kasaris's argument in support of his motion to dismiss is straightforward. He asserts that the letter in question was written by him in his capacity as a private citizen, and not as a governmental official. If that is so, he cannot have violated Mr. Viola's First Amendment rights - only a governmental actor can do that - and the complaint should therefore be dismissed for failure to state a claim upon which relief can be granted.

State action, or action under "color of law," is an element of a §1983 claim. The plaintiff in a §1983 case has the burden of pleading facts from which a plausible inference can be drawn that the plaintiff will be able to prove each element of his claim. See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(a proper complaint must plead "enough facts to state a claim to relief that is plausible on its face"). As the court in Real v. Mission, 2015 WL 4935627, *3 (M.D. Fla. Aug. 18, 2015), aptly observed, "[i]t is the plaintiff's burden to allege state action on the part of the defendants named in a complaint ...." So the key question here is: has Mr. Viola alleged any facts from which it can plausibly be inferred that Mr. Kasaris was acting in some official, as opposed to purely private, capacity when he wrote the September 26, 2016 letter?

The first place to look in order to answer that question is the complaint. In ¶8, Mr. Viola alleges that "Defendant Daniel Kasaris is the Senior Assistant Ohio Attorney General and a licensed attorney in the State of Ohio, Bar # 0042315." The multiple references in other parts of the complaint to "Prosecutor Kasaris" and to the prosecution of Mr. Viola in Cuyahoga County support the inference that, at the time of those events, Mr. Kasaris was a Cuyahoga County prosecuting attorney. ¶15 alleges that Mr. Kasaris is an elected official, having been first elected to the North Royalton City Council in 2007. The complaint refers to the letter written by Mr. Kasaris and

attaches a copy, and it states that Mr. Viola and others "are ... concerned that they may be prosecuted by Mr. Kasaris...." Complaint, ¶23.  Apart from those statements, nothing in the complaint assists the Court in determining if Mr. Viola has adequately pleaded that Mr. Kasaris was acting in an official capacity when he wrote the letter in question.  And, as noted above, the letter itself was not written on official letterhead, nor did Mr. Kasaris use any of his official titles when signing it.

    The case law in this area is helpful.  One particularly instructive decision is <u>Teta v. Packard</u>, 959 F.Supp. 469 (N.D. Ill. 1997).  There, the plaintiff attempted to bring a Fourth Amendment false arrest or malicious prosecution claim against an employee of a state university who had filed a battery complaint against the plaintiff.  The defendant conceded that he was a state employee, but he argued that "he was not acting under color of state law when he signed a criminal complaint" and that "the power to file a criminal complaint is not conferred by statute upon a select few, but is available to all private citizens as a matter of right" - exactly the argument Mr. Kasaris makes here. <u>See Teta v. Packard</u>, 959 F. Supp. at 475.  The court noted that "[t]he traditional definition of acting under color of state law requires that the defendant have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" <u>Id</u>., quoting <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988).  It also said this:

> [N]ot every act committed by a public employee is attributable to the state. Acts of state officials "in the ambit of their personal pursuits" are not state action. <u>Screws v. United States</u>, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945). Thus, a public employee's private conduct, outside the scope of his employment and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law. <u>Van Ort v. Estate of</u>

>  Stanewich, 92 F.3d 831, 835-36 (9th Cir. 1996), cert. denied, 519 U.S. 1111, 117 S.Ct. 950, 136 L.Ed.2d 837 (1997): Martinez v. Colon, 54 F.3d 980, 986-87 (1st Cir.), cert. denied, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995); Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994); Pitchell v. Callan, 13 F.3d 545, 548 (2d Cir. 1994). There can be no state action or acting under of color of law if the challenged conduct is not related in some meaningful way either to the employee's governmental status or to the performance of his duties. Martinez, 54 F.3d at 987.

That is a succinct and accurate statement of the law, and this Court adopts and endorses it.

After examining the facts of the case, which indicated that the plaintiff and defendant got into a fight in a dormitory lobby and the defendant then filed a battery complaint, the court held that no state action had been shown.  It relied on the Seventh Circuit Court of Appeals' decision in Johnson v. Miller, 680 F.2d 39, 40 (7th Cir. 1982), for this statement: "To file a criminal complaint with the police is the act of a private citizen." Because that is so, and that is what the defendant did in that case, the court held that he had not acted under color of law - that is, that his action was not related in any meaningful way either to his status as a state employee or his official position - and that the claim against him had to be dismissed.  The same result was reached in Smith v. Avent, 1999 WL 33891 (N.D. Ill. Jan. 15, 1999), which involved a police officer who filed a complaint against someone who had made harassing or threatening phone calls to her at her home and place of work.  She filed the complaint with another officer, as any private citizen would have.  The court dismissed the claim brought under 42 U.S.C. §1983, reasoning that "the allegations do not concern police duties.  Rather, they are directed at actions taken by Avent as a citizen filing a complaint against another citizen. The fact that

she mentioned that she is a police officer in the complaint is irrelevant." Id. at *2.

The Court has set out the legal principles which led both of these courts to dismiss civil rights claims against government employees who filed criminal complaints in the same way private citizens would. These same principles have been followed by this Court, although in cases involving different facts. So, for example, in Libertarian Party of Ohio v. Husted, 188 F.Supp.3d 665, 672 (S.D. Ohio 2016), Judge Watson of this Court quoted this language from Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis, 361 F.3d 898, 903 (6th Cir. 20040: "It is the nature of the act performed, not the clothing of the actor or even the status of being on-duty, or off-duty, which determines whether the officer acted under color of law."

Applying these well-settled principles to the facts of this case, as pleaded in the complaint, the Court concludes that when Mr. Kasaris wrote the letter in question, he was acting as a private citizen - or, more precisely stated, that Mr. Viola has not plausibly alleged the opposite scenario. Here, unlike the defendants in either Teta v. Packard or Smith v. Avent, Mr. Kasaris did not even file a criminal complaint; he merely suggested that he had grounds to do so if he wished. The complaint does not allege any facts supporting the inference that Mr. Kasaris was more able than the average citizen to follow through with filing a criminal complaint just because of his governmental positions. The nature of the act he performed, or threatened to perform, is, as Johnson v. Miller observed, quintessentially a private act. Absent some plausible and well-pleaded facts which would distinguish this case from the routine situation where one private citizen threatens to file a complaint against another, the complaint simply does not satisfy the pleading requirements for a First Amendment or §1983 claim.

Because that is so, Mr. Kasaris' motion to dismiss under Rule 12(b)(6) must be granted.

### IV. Recommended Disposition

For the reasons stated above, the Court recommends that Defendant Daniel Kasaris's motion to dismiss (Doc. 6) be granted, that Plaintiff Tony Viola's motion for a temporary restraining order (Doc. 2) be denied, and that this case be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

### V. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge